Victor A. Vilaplana (SBN 58535)
Practus, LLC
P.O. Box 9058
La Jolla, CA 92038
Telephone: (619) 840-4130
Email: Victor.Vilaplana@Practus.com

and

BENJAMIN CARSON (283611)
Law Offices of Benjamin M. Carson, P.C.
5965 Village Way, Ste E105
San Diego, CA 92130
(858) 255.4529
ben@benjamincarsonlaw.com

Proposed Attorneys for Debtors and Debtors-in-Possession
Prime Plastic Surgery Associates Corp., PPS Group San Diego Corp., Case No. 24-00515; PPS Group Sacramento Corp., Case No. 24-00516; PPS Surgery Sacramento Corp., Case No. 24-00517; and PPS MedSpa Carmel Corp., Case No. 24-00518

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Prime Plastic Surgery Associates, Corp.<br>                    Debtor.<br><br>Prime Plastic Surgery Associates, Corp.<br>           Case No. 24-00514-CL11<br><br>PPS Group San Diego Corp.<br>           Case No. 24-00515-CL11<br><br>PPS Group Sacramento Corp.<br>           Case No. 24-00516-CL11<br><br>PPS Surgery Sacramento Corp.<br>           Case No. 24-00517-CL11<br><br>PPS MedSpa Carmel Corp.<br>           Case No. 24-00518-CL11<br><br>                    Debtors. | **BK CASE NO. 24-00514-CL11**<br><br>Chapter 11<br><br>Jointly Administered<br><br>**DEBTORS' MOTION FOR ORDER DISMISSING CASE; AND DECLARATION OF BENJAMIN M. CARSON**<br><br>**DATE:** March 18, 2024<br>**TIME:** 9:30 a.m.<br>**PLACE**: Dept 5/Room 318<br>**JUDGE**: Hon. Christopher B. Latham |

1

**X**☐  Affects all Debtors

☐ Affects Prime Plastic Surgery Associates Corp.

☐ Affects PPS Group San Diego Corp.

☐ Affects Group Sacramento Corp.

☐ Affects Surgery Sacramento Corp.

☐ Affects PPS MedSpa Carmel Corp

**TO THE HONORABLE CHRISTOPHER B. LATHAM, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PERSONS AND ENTITIES**: Debtors and Debtors-in-Possession, Prime Plastic Surgery Associates Corp., PPS Group San Diego Corp., PPS Group Sacramento Corp., PPS Surgery Sacramento Corp., and PPS MedSpa Carmel Corp. (collectively, "Debtors") for cause as set forth below move the Court for an order dismissing these Chapter 11 cases, conditioned on Debtor paying the United States Trustee quarterly fees due. This motion is based on the attached Memorandum and Declaration of Benjamin M. Carson and the contents of the record of this case.  On March 4, 2024, the Court granted Debtor's oral motion to shorten time to notice this Motion, instructing Debtor to serve notice no later than March 6, 2024. Any opposition to the Motion must be filed and served by March 14, 2024, and replies, if any, will be presented orally at the hearing. The Hearing on the Motion will take place on March 18, 2024, at 9:30 a.m.

# MEMORANDUM

## Summary of Relief Sought

1. Debtors and debtors-in-possession, Prime Plastic Surgery Associates Corp., PPS Group San Diego Corp., PPS Group Sacramento Corp., PPS Surgery Sacramento Corp., and PPS MedSpa Carmel Corp. (collectively, "Debtors") and White Oak Global Advisors ("White Oak") have reached an agreement, summarized herein, to negotiate in good faith a global resolution to the disputes leading to the filing of the above-captioned action.[1]  This resolution includes the dismissal of the Debtors' cases, which for the reasons set forth herein, are in the best interests of the Debtors and their respective creditors.

### I.   INTRODUCTION

2. Debtors voluntarily filed these Chapter 11 cases in order to address Debtors' obligations under guaranties made by Debtors to White Oak, as agent for a group of lenders (the "Lenders") in connection with loans made to Debtors' affiliate, Plastic Surgery Management LLC (and such other additional borrowers from time to time party thereto (collectively, the "Borrowers")), in the aggregate principal amount of $40,000,000 under a certain loan agreement (as amended, modified, supplemented and/or restated from time to time, the "Loan Agreement").

---

[1] Debtors and White Oak have agreed to reserve all rights either party may have under any contracts, agreement and/or applicable law, including, without limitation, in the event that dismissal is not granted, or global resolution is not reached.  Nothing herein shall constitute a waiver by White Oak of the events of default under the loan documents or otherwise, and nothing herein shall constitute an admission by Debtors as to the interests of White Oak in, among other things, Debtors' cash collateral.

3

3. The filing of these Chapter 11 cases was precipitated by various events, including events of default under the Loan Agreement as a result of¸ *inter alia*, Borrowers' failure to make certain monthly and quarterly payments due under the Loan Agreement. Otherwise, the Debtors are more or less current with their respective obligations to creditors other than White Oak and the Lenders.

4. Prior to and since the filing of these cases, White Oak, Debtors and certain of Debtors' affiliates have been in discussions regarding a potential forbearance agreement pursuant to which White Oak would agree to forbear from exercising rights and remedies in consideration for certain terms and conditions. The parties continued to discuss forbearance postpetition and have reached an agreement (the "Forbearance Agreement") (See Exhibit A to Carson Declaration) pursuant to which, *inter alia*, (i) White Oak will agree to forbear from exercising certain rights and remedies against Debtors and their principal, Dr. James Chao, for a limited period of time, (ii) Debtors will be permitted to continue using cash collateral during such forbearance, and (iii) the parties agree to promptly recommence negotiations in good faith to reach a global settlement.

5. In light of, *inter alia*, (i) the early status of this case, (ii) the Debtors' *di minimis* obligations owing to unsecured creditors, (iii) the fact that no schedules have been filed, that the claims filed are *di minimis* in number and amount, and no creditors other than White Oak have appeared, and (iv) the agreement with its secured creditor, White Oak, that will permit Debtors to continue operating as a going concern while continuing efforts to resolve the defaults under the Loan Agreement, subject to the dismissal of Debtors' Chapter 11 cases, dismissal of this case is in the best interest of the Chapter 11 estates and all creditors.

6. Dismissal will allow the Debtors to reach a global resolution with the most substantial, and secured creditor while at the same time, Debtors will be able to continue operations in the ordinary course of business.

4

7. Dismissal will also allow Debtors to focus on a mutual resolution with White Oak while avoiding the incurrence of the additional attorneys' fees and costs attendant to being in bankruptcy and also relieve the Court and the United States Trustee's Office of the need to expend limited time and resources on this case. All fees due to Office of the United States Trustee will be paid prior to dismissal.

**I.    FACTS**

8. On February 17, 2024 (the "Petition Date"), James Chao ("Chao"), the Debtor's president and 100% shareholder of Debtor's parent company (and affiliated debtor) signed the petitions commencing the Chapter 11 cases for Debtors as duly acting President of Debtors.

9. The Debtors continue in possession of their property and operating their respective businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. On March 4, 2024, upon oral motion, the Debtors' cases were administratively consolidated.

11. As noted above, Debtors and White Oak, together with other parties including affiliates of the Debtor, are parties to a Loan Agreement pursuant to which White Oak and the Lenders extended $40 million in Loans to Borrowers which obligations were guaranteed by Debtors and the other Guarantors.

12. The filing of these Chapter 11 cases was precipitated by certain events, including events of default by Borrowers under the Loan Agreement.

13. On February 23, 2024, Debtors filed Emergency First Day Motions for Entry of an Order Authorizing the Payment of Pre-Petition Compensation, Wages, Salaries, Commissions and Employee Benefits (the "Payroll Motions").

5

14. On February 23, 2024, Debtors filed the Motions of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order Authorizing Compensating Critical Prepetition Providers and Vendors (the "Critical Vendor Motions").

15. On February 28, 2024, White Oak filed limited objections to the Payroll Motions and the Critical Vendor Motions.

16. Pursuant to a Stipulation to Pay Pre-Petition Compensation filed with the Court on February 28, 2024, White Oak consented to the entry of orders authorizing Debtor's limited use of cash collateral to pay certain pre-petition compensation to its employees (the "Stipulations"). The Court entered the proposed orders on February 29, 2024 (the "Order") and scheduled a final hearing for April 12, 2024. The Critical Vendor Motions remain pending.

17. On February 29, 2024, the Debtors filed motions seeking entry of orders, *inter alia*, authorizing Debtors to use White Oak's cash collateral to fund their respective operations and granting White Oak replacement liens on Debtors' post-petition proceeds (the "Cash Collateral Motions").

18. On March 1, 2024, White Oak filed objections to the Cash Collateral Motions and thereafter Debtors filed replies in further support of the Cash Collateral Motions.

19. Status reports containing the cash collateral orders as agreed between White Oak, the Debtors and the United States Trustee were filed with the Court on March 4, 2024.

20. White Oak and Debtors, among others, have reached an agreement pursuant to which White Oak will agree to forbear from exercising certain rights and remedies for a limited period of time, the Debtors will be entitled to continue using White Oak's cash collateral to fund operations in accordance with an agreed budget, and the parties will continue to negotiate in good faith regarding a broader global resolution of all disputes under the Loan Agreement and related documents.

6

21. As part of their agreement, Debtors have agreed to voluntarily dismiss the Chapter 11 cases and Debtors believe that doing so is in the best interests of the estate and their respective creditors so that Debtors can move forward with their agreement with White Oak and pursue the global settlement.

## II. ARGUMENT

22. Pursuant to 11 U.S.C. § 305(a), the Court may dismiss these cases if the interests of creditors and the debtor would be better served by such dismissal.

23. Courts have found dismissal pursuant to Section 305 appropriate in situations where the debtor and its creditors work out an arrangement and the rights of creditors are not prejudiced by that arrangement or dismissal of the case. *See*, *e.g.*, *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1015 ("Section 305(a)(1) reflects a policy. . . which favors "workouts": private, negotiated adjustments of creditor-company relations."); *see also*, *High Plains Mesa Holdings, LP*, 2021 WL 4995461 (Bankr. E.D. Ca., Oct. 20, 2021 (citing *Marciano v. Fahs*, 459 B.R. 27, 49-50 (B.A.P. 9th Cir. 2011) (finding dismissal appropriate where the creditors and the debtor are better served by dismissal).

24. Of factors considered by courts considering a motion to dismiss under Section 305(a)(1), of paramount concern is economy and efficiency. *High Plains Mesa*, 2021 WL 4995461 *11-12.

25. Additionally, pursuant to 11 U.S.C. § 1112(b), "on request of a party in interest, the court shall…dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."

26. "Cause" is not defined in the Bankruptcy Code.

27. Here, "cause" for dismissal exists.

28. Here, dismissal is in the best interests of the creditors and the Debtor.

7

29. The case was precipitated by a number of causes, including events of default arising under the Loan Agreement with White Oak and the other Lenders, implicating the Debtors' guaranty obligations under the Loan Agreement.

30. Other than with respect to the Loan Agreement, Debtors are current with most, if not all, of their respective suppliers, vendors and other unsecured creditors and no other creditors have appeared in this case.

31. The Debtors intend to pay all outstanding U.S. Trustee quarterly fees prior to or in connection with any dismissal of this case.

32. The Debtors and White Oak have reached an agreement pursuant to which, among other things, White Oak will forbear from exercising certain rights and remedies against Debtors.

33. To further the objectives of the forbearance and the work out of a global resolution, Debtors have agreed to voluntarily dismiss these Chapter 11 cases.

34. No other parties will be prejudiced by dismissal because the agreement with White Oak will permit the Debtors to utilize cash collateral in accordance with an agreed budget, resume operations in the ordinary course of business and continue each of the Debtors as a going concern while the Debtor and White Oak negotiate, in good faith, a consensual, global resolution of their dispute.

35. Economy and efficiency are best served by dismissal of this case.

36. Dismissal will permit White Oak and the Debtor to continue negotiations towards a global resolution, while shedding the costs and business interruption associated with the bankruptcy proceeding.

37. Accordingly, the Debtors submit that the interests of the debtor and creditors would be best served by dismissal in accordance with Section 305(a)(1) and 1112(b)(1) of the Bankruptcy Code.

8

**CONCLUSION**

For all of the foregoing reasons the Court should dismiss this Chapter 11 case, conditioned only on requiring the Debtor to pay all United States Trustee quarterly fees due.

DATED: March 6, 2024 /s/ Benjamin M. Carson
Benjamin Carson (283611)
Law Offices of Benjamin M. Carson, P.C.
5965 Village Way, Ste E105
San Diego, CA 92130
(858) 255.4529
ben@benjamincarsonlaw.com

/s/ Victor A. Vilaplana
Victor A. Vilaplana (SBN 58535
Practus, LLC
P.O. Box 9058
La Jolla, CA 92038
Telephone: (619) 840-4130
Email: Victor.Vilaplana@Practus.com

*Proposed Attorneys for Debtors*

9

## **DECLARATION OF BENJAMIN CARSON**

I, Benjamin M. Carson, declare:

1. I am an attorney at law, duly admitted to practice before this Court, and a member in good standing of the State Bar of California. I am counsel with the law firm of Law Offices of Bejamin M. Carson, P.C., proposed bankruptcy counsel for Prime Plastic Surgery Associates Corp., PPS Group San Diego Corp., PPS Group Sacramento Corp., PPS Surgery Sacramento Corp., and PPS MedSpa Carmel Corp. (collectively, "Debtors"), debtors and debtors-in-possession in the respective Chapter 11 cases pending before this Court as case numbers 24-00514-CL11, 41-00515-CL11, 24-00516-CL11, 42-00517-CL11 and 24-00518-CL11 (the "Chapter 11 Cases"). I have personal knowledge of the facts set forth below which I have learned in the course of representing Debtors in this case. If called as a witness, I could and would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.[2]

2. These Chapter 11 Cases were commenced by Debtors' filing of voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* on February 17, 2024. Debtors are the operators of certain plastic surgery medical facilities in California.

3. Pursuant to a certain Loan and Security Agreement dated as of July 20, 2022 (as amended by that certain First Amendment to Loan and Security Agreement dated as of October 21, 2022, and by that certain Second Amendment to Loan and Security Agreement dated as of

---

[2] Debtors and White Oak have agreed to reserve all rights either party may have under any contracts, agreement and/or applicable law, including, without limitation, in the event that dismissal is not granted, or global resolution is not reached. Nothing herein shall constitute a waiver by White Oak of the events of default under the loan documents or otherwise, and nothing herein shall constitute an admission by Debtors as to the interests of White Oak in, among other things, Debtors' cash collateral.

10

February 3, 2023, and as the same may have been or may be further amended, modified, supplemented and/or restated from time to time, the "Loan Agreement"), by and among Prime Plastic Surgery Management LLC and such other additional borrowers from time to time party thereto (collectively, the "Borrowers"), certain guarantors from time to time party thereto including Debtors (collectively with the other guarantors, the Guarantors"), and White Oak Global Advisors ("White Oak"), as administrative agent for a group of lenders (the "Lenders"), Lenders extended to Borrowers a series of loans (the "Loans") in the aggregate original principal amount of $40,000,000.

    4.    The immediate cause of these Chapter 11 Cases were events of default by Borrowers under the Loan Agreement.

    5.    Other than with respect to the Loan Agreement, the Debtor is effectively current with most, if not all, of its suppliers, vendors and other creditors.

    6.    No other creditors have appeared in this Chapter 11 case and a few, and even then, *di minimis*, claims in amount have been filed.

    7.    Prior to and since the filing of this case, Debtors and their affiliates have been in discussions with White Oak to resolve their disputes under the Loan Agreement.

    8.    The parties have now reached an agreement pursuant to which White Oak will agree to forbear from exercising rights and remedies for a limited period of time and the Debtors will be permitted to continue using White Oak's collateral, including its cash collateral, in accordance with an agreed budget to fund operations. This agreement (the "Forbearance Agreement") is attached hereto as Exhibit A.

    9.    At the same time, the parties have agreed to promptly negotiate, in good faith, a mutually acceptable global resolution of their dispute.

10. To further the forbearance, Debtors have agreed to seek voluntary dismissal of these Chapter 11 Cases.

11. Dismissal is in the best interests of the estate and its creditors because it will allow the Debtors to continue as going concerns while using White Oak's collateral in accordance with the agreed budget to fund operations, while negotiating a mutually acceptable settlement with White Oak.

12. In connection with dismissal, the Debtor proposes to pay all U.S. Trustee quarterly fees that are due.

13. Accordingly, based on all of the above, I respectfully submit that voluntary dismissal of this Chapter 11 case without prejudice pursuant to 11 U.S.C. § 305(a)(1) is in the best interests of the debtor and creditors in this case.

14. Alternatively, I respectfully submit that voluntary dismissal of this Chapter 11 case for cause and without prejudice pursuant to 11 U.S.C. § 1112(b) is warranted and in the best interests of the Debtor's estate and its creditors.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

EXECUTED this <u>6th</u> day of March, 2024 at San Diego California.

<u>/s/ Benjamin M. Carson</u>
Benjamin M. Carson

12

# EXHIBIT A

AGREEMENT REGARDING TERMS FOR THE DISMISSAL OF BANKRUPTCIES, ETC. (referred to herein as this "Agreement"):

Parties:

Debtors:  Prime Plastic Surgery Associates, and its wholly owned subsidiaries PPS Group San Diego Corp., PPS Group Sacramento Corp., PPS Surgery Sacramento Corp., and PPS MedSpa Carmel Corp. (each in its capacity as a debtor-in-possession, collectively "Debtors")

Secured Creditor: White Oak Global Advisors LLC ("White Oak")

Guarantor: Dr. James Chao ("Dr. Chao")

1. Forbearance Against Dr. Chao and Debtors.

White Oak will forbear from exercising further remedies against the Debtors (other than in connection with the protection of its interests in the Debtors' bankruptcies such as opposing motions and filing proofs of claim) and Dr. Chao as a guarantor of the obligations of Prime Plastic Surgery Management LLC ("Prime Management") to White Oak subject to the following:

The term of the forbearance will be 3 months from the date of execution of this Agreement by all parties; provided, however, that (a) any party can terminate the forbearance period upon 5 business days prior written notice, solely to extent that such party determines, in its sole discretion but in good faith, that a mutually acceptable Settlement Agreement (as defined below) is unattainable; and (b) the forbearance period will automatically terminate upon (i) a material breach of this agreement or the cash collateral order, (ii) gross mismanagement of the Debtors, or (iii) willful misconduct by Dr. Chao or the Debtors.  For purposes of clarity, failure of the Debtors to make payments to Prime Management under the ASA (as defined below) will not constitute a breach of this Agreement so long as the payments referenced in Section 2(c) below are timely made to Prime Management.

2. Use of Cash Collateral

White Oak will consent to Debtors' use of cash collateral for 3 months subject to standard terms, including, without limitation, the following:

(a) White Oak approved budget [attached hereto];
(b) White Oak shall be granted replacement liens on post-petition collateral;
(c) All cash in excess of $500,000 plus accrued (based on contracts in effect as of February 17, 2024) and unpaid bonuses to the Debtors' doctors (in the aggregate based on all Debtors cash balances following each payroll cycle) will be paid to Prime Management;
(d) Debtors will provide weekly reporting reflecting actual receipts and disbursements and a comparison thereof to the budget; and
(e) The Administrative Services Agreement (the "ASA") between Prime Management and Prime Plastic Surgery Associates Corporation ("Parent") will remain in full force and effect.

3. Global Settlement.  The parties agree to negotiate in good faith to reach global resolution of all claims among the parties, which will be evidenced by a settlement agreement mutually agreed to by all parties hereto (the "Settlement Agreement").  The parties will promptly commence such good faith negotiations as soon as the Application (as defined below) is filed.

4. <u>Dismissal of Bankruptcy Cases</u>. As soon as possible (but not later than 72 hours) after the date of execution of this Agreement, the Debtors will file an application (the "Application") to shorten time on the motion to dismiss the bankruptcy cases (of which such motion to dismiss will be attached as an exhibit (the "Motion")) without prejudice and move for expedited consideration of the Application and the Motion. Debtors will diligently pursue prosecution of the Application and the Motion.

5. <u>Physician's Contracts and ASA</u>. Neither the Debtors nor Dr. Chao shall take any action to terminate any of the contracts between the Debtors and the physicians employed by the Debtors or the ASA.

6. <u>Non-Solicitation, Etc</u>. During the forbearance period, neither Dr. Chao, the Debtors nor White Oak will, directly or indirectly, solicit, hire or retain any of the doctors or other employees of the Debtors for employment with entities other than the Debtors.

7. <u>Settlement Agreement</u>. If the parties hereto enter into a Settlement Agreement, the terms of such Settlement Agreement shall supersede the terms of this Agreement.

8. <u>Governing Law</u>. This Agreement shall be governed by the law of the State of New York without regard to principles of conflicts of laws, other than New York General Obligations Law 5-1401 and 5-1402. Debtors and White Oak agree to the jurisdiction of the bankruptcy court in connection with any disputes arising hereunder; provided that the bankruptcy court shall not have any jurisdiction in connection with any disputes solely between Dr. Chao and White Oak; provided further, that the Debtors reserve their rights under Section 105 of the bankruptcy to have the automatic stay extended to Dr. Chao (including as it relates to White Oak).

9. <u>Miscellaneous</u>. Nothing contained herein shall constitute a waiver by White Oak of the events of default under the loan documents. Each party reserves all of its rights it may have under any contracts, agreements or applicable law. This Agreement may be executed in counterparts.

IN WITNESS WHEREOF, intending to be legally bounds hereby, the parties hereto have caused this Agreement to be duly executed as of the dates set forth below their signatures.

**PRIME PLASTIC SURGERY ASSOCIATES CORP.**, a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 3, 2024

**PPS MEDSPA CARMEL CORP.**, a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 3, 2024

**PPS SURGERY SAN DIEGO CORP.**,
a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 3, 2024

**PPS SURGERY SACRAMENTO CORP.**,
a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 3, 2024

**PPS GROUP SAN DIEGO CORP.**,
a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 2, 2024

**PPS GROUP SACRAMENTO CORP.**,
a California corporation

By: *James Chao* (DocuSigned by: 3FD063DC8E7A4D3...)
Name: James Chao
Title: president

Dated: March 3, 2024

*James Chao*

**JAMES J. CHAO, M.D.,** individually as guarantor

Dated: March 3, 2024

**WHITE OAK GLOBAL ADVISORS, LLC**,
a Delaware limited liability company, as attorney in fact for the Lenders

By: *Barbara J. S. McKee*
Name: Barbara J. S. McKee
Title: Managing Partner

Dated: March 3, 2024

**FORECAST**
**Prime Plastic Surgery Associates Corp - Parent Co. & Subsidiaries**

| | | California Medical Practices | | | | | | | California Medical Practices | | | | | | | California Medical Practices | | | | | | | California Medical Practices | | | | | **3 MONTHS** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Changes Plastic Surgery | NassifMD | Kaufman Plastic Surgery | PPS& MedSpa | Total Practices | PPSAC Parent Co. | TOTAL | Changes Plastic Surgery | NassifMD | Kaufman Plastic Surgery | PPS& MedSpa | Total Practices | PPSAC Parent Co. | TOTAL | Changes Plastic Surgery | NassifMD | Kaufman Plastic Surgery | PPS& MedSpa | Total Practices | PPSAC Parent Co. | TOTAL | Changes Plastic Surgery | NassifMD | Kaufman Plastic Surgery | PPS& MedSpa | Total Practices | PPSAC Parent Co. | TOTAL |
| | 31-Mar | 31-Mar | 31-Mar | 31-Mar | 31-Mar | 31-Mar | 31-Mar | 30-Apr | 30-Apr | 30-Apr | 30-Apr | 30-Apr | 30-Apr | 30-Apr | 31-May | 31-May | 31-May | 31-May | 31-May | 31-May | 31-May | 3 Months | 3 Months | 3 Months | 3 Months | 3 Months | 3 Months | 3 Months |
| Procedure Revenue | 650,000 | 715,000 | 1,000,000 | 525,000 | 2,890,000 | - | 2,890,000 | 650,000 | 715,000 | 1,000,000 | 600,000 | 2,965,000 | - | 2,965,000 | 650,000 | 750,000 | 1,000,000 | 600,000 | 3,000,000 | - | 3,000,000 | 1,950,000 | 2,180,000 | 3,000,000 | 1,725,000 | 8,855,000 | - | 8,855,000 |
| **Total Revenue** | 650,000 | 715,000 | 1,000,000 | 525,000 | 2,890,000 | - | 2,890,000 | 650,000 | 715,000 | 1,000,000 | 600,000 | 2,965,000 | - | 2,965,000 | 650,000 | 750,000 | 1,000,000 | 600,000 | 3,000,000 | - | 3,000,000 | 1,950,000 | 2,180,000 | 3,000,000 | 1,725,000 | 8,855,000 | - | 8,855,000 |
| Cost of Sales | 162,500 | 178,750 | 250,000 | 131,250 | 722,500 | - | 722,500 | 162,500 | 178,750 | 250,000 | 150,000 | 741,250 | - | 741,250 | 162,500 | 187,500 | 250,000 | 150,000 | 750,000 | - | 750,000 | 487,500 | 545,000 | 750,000 | 431,250 | 2,213,750 | - | 2,213,750 |
| Compensation & Benefits | 276,000 | 180,000 | 287,627 | 334,709 | 1,078,336 | 202,000 | 1,280,336 | 184,000 | 90,000 | 191,751 | 223,139 | 688,891 | 135,000 | 823,891 | 184,000 | 90,000 | 191,751 | 223,139 | 688,891 | 135,000 | 823,891 | 644,000 | 360,000 | 671,130 | 780,987 | 2,456,117 | 472,000 | 2,928,117 |
| Independent Contractors | 95,416 | 50,000 | 41,667 | 29,167 | 216,249 | - | 216,249 | 95,416 | 50,000 | 41,667 | 29,167 | 216,249 | - | 216,249 | 95,416 | 50,000 | 41,667 | 29,167 | 216,249 | - | 216,249 | 286,248 | 150,000 | 125,000 | 87,500 | 648,748 | - | 648,748 |
| Non Physician Commission | - | - | 24,000 | 16,000 | 40,000 | - | 40,000 | - | - | 24,000 | 16,000 | 40,000 | - | 40,000 | - | - | 24,000 | 16,000 | 40,000 | - | 40,000 | - | - | 72,000 | 48,000 | 120,000 | - | 120,000 |
| Advertising | 15,000 | 35,000 | 32,000 | 15,000 | 97,000 | - | 97,000 | 15,000 | 35,000 | 32,000 | 15,000 | 97,000 | - | 97,000 | 15,000 | 35,000 | 32,000 | 15,000 | 97,000 | - | 97,000 | 45,000 | 105,000 | 96,000 | 45,000 | 291,000 | - | 291,000 |
| Occupancy | 29,921 | 45,856 | 66,097 | 70,161 | 212,035 | - | 212,035 | 29,921 | 45,856 | 66,097 | 32,934 | 174,808 | - | 174,808 | 29,921 | 45,856 | 66,097 | 32,934 | 174,808 | - | 174,808 | 89,762 | 137,568 | 198,291 | 136,028 | 561,650 | - | 561,650 |
| Insurance | 4,000 | 3,200 | 4,000 | 8,000 | 19,200 | - | 19,200 | 4,000 | 3,200 | 4,000 | 8,000 | 19,200 | - | 19,200 | 4,000 | 3,200 | 4,000 | 8,000 | 19,200 | - | 19,200 | 12,000 | 9,600 | 12,000 | 24,000 | 57,600 | - | 57,600 |
| Bank card merchant fees | 18,000 | 18,000 | 32,000 | 14,000 | 82,000 | - | 82,000 | 18,000 | 18,000 | 32,000 | 14,000 | 82,000 | - | 82,000 | 18,000 | 18,000 | 32,000 | 14,000 | 82,000 | - | 82,000 | 54,000 | 54,000 | 96,000 | 42,000 | 246,000 | - | 246,000 |
| Legal fees | 4,167 | 4,167 | 4,167 | 4,167 | 16,667 | 16,667 | 33,333 | 4,167 | 4,167 | 4,167 | 4,167 | 16,667 | 16,667 | 33,333 | 4,167 | 4,167 | 4,167 | 4,167 | 16,667 | 16,667 | 33,333 | 12,500 | 12,500 | 12,500 | 12,500 | 50,000 | 50,000 | 100,000 |
| Technology & Communications | - | - | - | - | - | 13,000 | 13,000 | - | - | - | - | - | 13,000 | 13,000 | - | - | - | - | - | 13,000 | 13,000 | - | - | - | - | - | 39,000 | 39,000 |
| Other Operating Expenses | 28,000 | 36,000 | 65,000 | 60,000 | 189,000 | 50,000 | 239,000 | 28,000 | 36,000 | 65,000 | 60,000 | 189,000 | 50,000 | 239,000 | 28,000 | 36,000 | 65,000 | 60,000 | 189,000 | 50,000 | 239,000 | 84,000 | 108,000 | 195,000 | 180,000 | 567,000 | 150,000 | 717,000 |
| **Total Expenses** | 633,003 | 550,973 | 806,559 | 682,453 | 2,672,987 | 281,667 | 2,954,654 | 541,003 | 460,973 | 710,682 | 552,406 | 2,265,064 | 214,667 | 2,479,731 | 541,003 | 469,723 | 710,682 | 552,406 | 2,273,814 | 214,667 | 2,488,481 | 1,715,010 | 1,481,668 | 2,227,921 | 1,787,266 | 7,211,865 | 711,000 | 7,922,865 |
| **Net** | 16,997 | 164,027 | 193,442 | (157,453) | 217,013 | (281,667) | (64,654) | 108,997 | 254,027 | 289,318 | 47,594 | 699,936 | (214,667) | 485,269 | 108,997 | 280,277 | 289,318 | 47,594 | 726,186 | (214,667) | 511,519 | 234,990 | 698,332 | 772,079 | (62,266) | 1,643,135 | (711,000) | 932,135 |
| Cash Transfer to PPSAC | 77,458 | 77,458 | 77,458 | 77,458 | 309,833 | (309,833) | - | 59,033 | 59,033 | 59,033 | 59,033 | 236,133 | (236,133) | - | 59,033 | 59,033 | 59,033 | 59,033 | 236,133 | (236,133) | - | 195,525 | 195,525 | 195,525 | 195,525 | 782,100 | (782,100) | - |
| **Net after Management Fees** | (60,462) | 86,569 | 115,984 | (234,912) | (92,828) | 28,167 | (64,654) | 49,963 | 194,994 | 230,285 | (11,439) | 463,802 | 21,467 | 485,269 | 49,963 | 221,244 | 230,285 | (11,439) | 490,052 | 21,467 | 511,519 | 39,465 | 502,807 | 576,554 | (257,791) | 861,035 | 71,100 | 932,135 |

**CASH FLOW**

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance - 02/29/2024 | 640,177 | 803,607 | 512,391 | 337,647 | 2,293,821 | 905 | 2,294,727 | 502,596 | 467,638 | 463,445 | 118,453 | 1,552,132 | (34,878) | 1,041,219 | 552,560 | 662,632 | 693,730 | 122,013 | 2,030,934 | (13,411) | 1,511,488 | 640,177 | 803,607 | 512,391 | 337,647 | 2,293,821 | 905 | 2,294,727 |
| Net Cash Flow | 16,997 | 164,027 | 193,442 | (157,453) | 217,013 | (281,667) | (64,654) | 108,997 | 254,027 | 289,318 | 47,594 | 699,936 | (214,667) | 485,269 | 108,997 | 280,277 | 289,318 | 47,594 | 726,186 | (214,667) | 511,519 | 234,990 | 698,332 | 772,079 | (62,266) | 1,643,135 | (711,000) | 932,135 |
| Cash Transfer to PPSAC | (77,458) | (77,458) | (77,458) | (77,458) | (309,833) | 309,833 | - | (59,033) | (59,033) | (59,033) | (59,033) | (236,133) | 236,133 | - | (59,033) | (59,033) | (59,033) | (59,033) | (236,133) | 236,133 | - | (195,525) | (195,525) | (195,525) | (195,525) | (782,100) | 782,100 | - |
| Cash to cover PPS MEDSPA | - | - | - | 150,000 | 150,000 | - | (150,000) | - | - | - | 15,000 | 15,000 | - | (15,000) | - | - | - | 35,000 | 35,000 | - | (35,000) | - | - | - | 200,000 | 200,000 | - | (200,000) |
| Accounts Payable Invoices to be paid - pending court approval | (77,119) | (422,538) | (164,930) | (134,283) | (798,869) | (63,950) | (862,819) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (77,119) | (422,538) | (164,930) | (134,283) | (798,869) | (63,950) | (862,819) |
| Cash to PPS MGMT - Management | | | | | | | (176,035) | | | | | | | | | | | | | | | | | | | | | (176,035) |
| **Ending Cash Balance** | 502,596 | 467,638 | 463,445 | 118,453 | 1,552,132 | (34,878) | 1,041,219 | 552,560 | 662,632 | 693,730 | 122,013 | 2,030,934 | (13,411) | 1,511,488 | 602,523 | 883,876 | 924,015 | 145,574 | 2,555,987 | 8,055 | 1,988,007 | 602,523 | 883,876 | 924,015 | 145,574 | 2,555,987 | 8,055 | 1,988,007 |
| Cash reserves for accrued Productivity Bonus | (56,667) | (268,125) | (171,927) | (44,500) | (541,218) | - | (541,218) | (113,333) | (536,250) | (343,853) | (89,000) | (1,082,436) | - | (1,082,436) | (170,000) | (817,500) | (515,780) | (133,500) | (1,636,780) | - | (1,636,780) | (170,000) | (817,500) | (515,780) | (133,500) | (1,636,780) | - | (1,636,780) |
| **Net Cash Reserve** | 445,930 | 199,513 | 291,518 | 73,953 | 1,010,913 | (34,878) | 500,000 | 439,226 | 126,382 | 349,877 | 33,013 | 948,498 | (13,411) | 429,051 | 432,523 | 66,376 | 408,235 | 12,074 | 919,207 | 8,055 | 351,227 | 432,523 | 66,376 | 408,235 | 12,074 | 919,207 | 8,055 | 351,227 |